511 So.2d 1038 (1987)
Frederick Charles HALL, Appellant,
v.
STATE of Florida, Appellee.
No. BQ-408.
District Court of Appeal of Florida, First District.
August 5, 1987.
*1039 Frederick Hall, pro se.
No appearance for appellee.
ZEHMER, Judge.
Frederick Charles Hall appeals the trial court's denial of his motion for post-conviction relief pursuant to rule 3.850, Florida Rules of Criminal Procedure. Finding that Hall's motion has merit, we reverse.
Hall was convicted in 1985 under section 790.23, Florida Statutes (1983), of possession of a firearm by a convicted felon. That offense is a second degree felony punishable by a term of imprisonment not exceeding fifteen years. Because Hall had been convicted in 1982 of aggravated assault, a felony, and had a history of juvenile offenses, the trial court adjudged him to be a habitual offender under section 775.084, Florida Statutes (1983), and sentenced him to twenty years in prison.[1] This sentence, according to Hall's motion, represented a substantial departure from the guidelines' recommended sentence of any nonstate prison sanction. Hall appealed, and we affirmed the conviction. Hall v. State, 492 So.2d 692 (Fla. 1st DCA 1986). We also approved Hall's habitual-offender status as a valid reason for departure, citing Shull v. State, 481 So.2d 1294 (Fla. 1st DCA 1986); Payne v. State, 480 So.2d 202 (Fla. 1st DCA 1985) (on motion for rehearing), reversed, 498 So.2d 413 (Fla. 1986); and Whitehead v. State, 467 So.2d 779 (Fla. 1st DCA 1985), reversed, 498 So.2d 863 (Fla. 1986), but reversed and remanded for resentencing because the trial court had not reduced the reasons for departure to writing, citing Shull and Cuthbert v. State, 459 So.2d 1098, 1100 n. 3 (Fla. 1st DCA 1984). At Hall's resentencing on July 21, 1986, the trial court reimposed the same twenty-year sentence, and stated in writing that the sole reason for departure was Hall's status as a habitual offender. At that time, this reason was in accord with our decision in Whitehead v. State, 467 So.2d 779, *1040 and numerous other district court of appeal decisions. Hall did not appeal this reimposed sentence within thirty days.[2]
On October 30, 1986, approximately three months after resentencing, Hall filed the instant motion for post-conviction relief. He alleges that his twenty-year sentence was grossly in excess of the guidelines and clearly unreasonable and, further, that his status as a habitual offender had not been properly adjudicated in a separate proceeding. On that same date, the supreme court released its decision in Whitehead v. State, 498 So.2d 863 (Fla. 1987), reversing this court's decision and holding that finding a defendant to be a habitual offender is not a legally sufficient reason for departure from the sentencing guidelines' recommended sentence.[3] Obviously Hall's motion could not refer to that decision, but it was clearly the applicable law at the time the trial court summarily denied the motion on November 18, 1986.[4] If the supreme court decision in Whitehead is applicable to this case, Hall's departure sentence of twenty years is patently invalid. The question before us, then, is whether Hall's motion for post-conviction relief should be granted on the basis of that decision, which overturned the entire legal foundation of Hall's departure sentence.
In Witt v. State, 387 So.2d 922 (Fla.), cert. denied, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980), the supreme court held that, to be cognizable under rule 3.850, a change in the decisional law must emanate from either the United States Supreme Court or the Florida Supreme Court and must be a "fundamental and constitutional" change. 387 So.2d at 929. The court noted that most major constitutional law changes fall into two categories: first, changes of law which place beyond the authority of the state the power to regulate certain conduct or to impose certain penalties;[5] second, those changes which meet the three-prong test for retroactivity enunciated in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) and Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).[6] The court then stated:
In contrast to these jurisprudential upheavals are evolutionary refinements in the criminal law, affording new or different standards for the admissibility of evidence, for procedural fairness, for proportionality review of capital cases, and for other like matters. Emergent rights in these categories, or the retraction of former rights of this genre, do not compel an abridgement of the finality of judgments. To allow them that impact would, we are convinced, destroy the stability of the law, render punishments uncertain and therefore ineffectual, and burden the judicial machinery of our state, fiscally and intellectually, beyond any tolerable limit.
387 So.2d at 929-30.
Relying on the Witt decision, we previously held, rightly or wrongly, that a supreme court decision holding invalid a reason *1041 for departure previously recognized as valid under lower appellate decisions is not a fundamental change of law warranting rule 3.850 post-conviction relief for those persons whose sentences have become final. Kiser v. State, 505 So.2d 9 (Fla. 1st DCA 1987); Ardley v. State, 491 So.2d 1259 (Fla. 1st DCA 1986). If we appplied the rule of these cases in the present case, we would be required to hold that Hall is precluded from collaterally attacking the validity of his departure sentence based on the supreme court's decision in Whitehead.
These decisions, however, were handed down before the supreme court's recent decision in Bass v. State, 12 F.L.W. 289 (Fla. June 11, 1987). As Justice Ehrlich observed in his dissent, the majority opinion in Bass appears to turn the Witt decision on its head, at least in respect to the construction of statutes governing the length of sentences that may be imposed under statutory law. Bass involved the stacking of minimum mandatory three-year terms. After Bass's sentence became final, the supreme court held such stacking to be illegal in Palmer v. State, 438 So.2d 1 (Fla. 1983). The supreme court held that Bass could challenge his sentence by way of a rule 3.850 motion even though Palmer was released after Bass's sentence became final. The court reasoned that it need not decide whether Palmer should retroactively apply to invalidate Bass's sentence because the Palmer decision did not change the substantive law of sentencing but merely interpreted preexisting statutory law and "corrected mistakes in its implementation." 12 F.L.W. at 289. The court then continued:
Because we believe that Palmer does not represent any change in law, we need not examine the issue of whether violation of that decision is fundamental error. Nor do we here consider whether Palmer should retroactively apply. Our determination that Palmer did not change the law of sentencing in any substantive way necessarily precludes examination of those issues.
Furthermore, because the trial court's sentencing error was not pointed out by this Court until Palmer, we hold that petitioner's rule 3.850 motion is not precluded by his failure to raise the issue on direct appeal. If Bass's sentence was illegal from its inception, then it does not matter that courts and attorneys were not alerted to its illegality until Palmer. At the time of the original sentencing, neither he, nor his attorney, nor the trial court, were aware that the stacked sentence was illegal. The fact that courts and lawyers did not know what interpretation this Court would give to section 775.087 when it was enacted does not render Bass's sentence legal, but it does excuse his failure to raise the matter on direct appeal. Therefore Bass may now attack the legality of his sentence.
It would be inherently unjust to allow the imposition of an illegal sentence without providing a mechanism to attack that sentence, simply because courts were unaware of its illegality at the time of imposition of the sentence. Because the motion seeks to correct or "vacate a sentence which exceeds the limits provided by law," the motion "may be filed at any time." Fla.R.Crim. Procedure 3.850.
12 F.L.W. at 289.
We read the Bass opinion to mean that when the supreme court construes an existing statute governing the length of sentences that may be lawfully imposed and reaches a construction of the statute that is contrary to a construction theretofore announced in a district court of appeal decision, the supreme court's decision is not a change in the law but merely announces what the statutory law always has been. Thus, where the changed construction reveals that a sentence, apparently legal when imposed, is illegal under the new construction, such sentence may be collaterally attacked under rule 3.850. In effect, a lower appellate court decision construing a statute defining the sentence that can be lawfully imposed does not establish what the statute actually means and, in this sense, what the law actually is, but only what the law may be until actually approved or overruled by the supreme court. Once interpreted by the supreme court, the statute must be given that meaning from *1042 its inception, not only in cases currently on appeal, but also in those cases which have already become final after appeal to the district courts.
We have experienced some difficulty discerning the precise effect of the holding in Bass on the issue before us. The decision appears to be based exclusively on the legal principle that the court's construction of a statute gives it meaning from the inception of the statute (unless otherwise specified in the decision)[7] to the complete exclusion of the legal doctrines of law of the case and the correlative concept of finality of decisions.[8] Ordinarily, a decision which has become final based upon a certain construction of a statute may not thereafter be reopened and readjudicated because of a changed construction of that statute.[9]Bass holds, however, that a different rule applies in respect to criminal sentences because of the explicit language in rule 3.850 which permits appellate review of a sentence that exceeds the limits provided by the sentencing guidelines law at any time.[10]
Why, then, does Bass seem to accord different treatment and effect to changes in sentencing laws than does Witt? Although the majority opinion in Bass made no reference to Witt and did not explicitly distinguish it, we note that the change of law arguments in Witt were predicated on decisions of the Florida Supreme Court or the United States Supreme Court which allegedly changed rules announced in prior opinions regarding application of the death sentence, and that Witt did not involve a direct construction of applicable statutory language specifying the length of the sentence that could lawfully be imposed. The Palmer decision, on the other hand, construed on direct appeal, for the first time by the supreme court, the meaning of the language in section 775.087 regarding the circumstances under which the minimum mandatory sentences therein specified could be imposed, and reached a result contrary to the construction of that statute by a lower appellate court. Perhaps, therefore, the material distinction between Bass and Witt lies in the fact that Palmer overruled a lower court construction of a statute bearing on the permissible length of sentence that could be imposed. Because we find no other basis for distinguishing these cases, we believe Bass  not Witt  to be the controlling precedent on the issue before us. In this case, as in Bass, the supreme court overruled a lower court construction of a statute, with the result that the length of a sentence that could be lawfully imposed was changed.[11]
*1043 Whitehead expressly construed section 921.001 and the implementing provisions of the guidelines rules approved by the legislature to mean that section 775.084 does not provide an exemption from the sentencing guidelines requirements and held that to permit departure from the limitations imposed by the recommended guidelines sentence on the basis of the criteria of the habitual offender statute was impermissible because it conflicted with the provisions of the sentencing guidelines rules as previously construed in Hendrix v. State, 475 So.2d 1218 (Fla. 1985). According to Whitehead, the sentencing guidelines established by section 921.001, as implemented by rules 3.701 and 3.988, effectively superceded the habitual-offender statute, so that at no time from the inception of sentencing guidelines could a valid departure sentence be based upon a defendant's adjudication as an habitual offender. Simply stated, Whitehead says that the lower appellate court's construction of the sentencing guidelines statute and rules was in error, with the result that no departure sentence based on habitual offender status was ever valid. It follows that, under Bass, the twenty-year sentence imposed on Hall, being well in excess of the recommended sentence of any nonstate prison sanction, constituted an invalid departure from the guidelines because it was based solely upon a legally insufficient reason, his habitual offender status. Therefore, Hall's sentence was illegal from its inception.[12] To paraphrase the opinion in Bass, since neither Hall, his attorney, the trial court, nor the district court of appeal, were aware that the departure sentence was illegal, the district court's approval of that reason on direct appeal does not preclude Hall from attacking the sentence by post-conviction motion under rule 3.850.[13]
Hall is presently incarcerated in state prison pursuant to an illegal sentence. Under Whitehead the grounds recited in the record for adjudging Hall a habitual offender cannot be used to support a departure sentence. If, in fact, the maximum sentence that may be lawfully imposed is the guidelines recommended sentence of any nonstate prison sanction, as Hall's motion contends, he is entitled to immediate release from prison and resentencing, probably within the recommended range. Accordingly, the order denying Hall's 3.850 motion is reversed and the cause is remanded for further proceedings in accordance with this opinion.
Hall's twenty-year sentence exceeds the fifteen-year maximum imprisonment authorized for second degree felonies, section 775.082, but is well within the maximum enhancement permissible under the habitual offender statute, section 775.084. The supreme court's Whitehead opinion brings into question but does not appear to have precluded use of section 775.084 to enhance the sentence permitted under section 775.082 as a predicate for imposition of a sentence that either falls within the guidelines recommended range, Hoefert v. State, 509 So.2d 1090 (Fla. 2nd DCA 1987); Winters v. State, 500 So.2d 303 (Fla. 1st DCA 1987); Myers v. State, 499 So.2d 895 (Fla. 1st DCA 1987), or departs from the guidelines range for valid reasons other than habitual-offender status, Hester v. State, 503 So.2d 1342, 1346 (Fla. 1st DCA 1987); Holmes v. State, 502 So.2d 1302 (Fla. 1st DCA 1987). The limited record before us suggests that Hall's habitual-offender status was based entirely upon his prior record and reveals no other independent basis for departing from the guidelines; therefore, the trial court will be limited to resentencing within the guidelines range unless the state, in the excercise of its discretion, presents evidence of valid *1044 reasons supporting departure.[14] Moreover, perhaps by then the supreme court will have answered the questions certified in several of the cited cases and provided further guidance as to the extent to which, if any, section 775.084 continues to have viability.
We recognize that this decision will have the effect, unless quashed by the supreme court, of authorizing convicted persons presently serving a sentence exceeding the recommended guidelines range based on habitual-offender status to collaterally attack the legality of their sentence in rule 3.850 motions. Because this consequence makes the issue here decided one of great public importance, we certify to the supreme court the following question:
IS APPELLANT PERMITTED TO COLLATERALLY ATTACK THE LEGALITY OF HIS GUIDELINES DEPARTURE SENTENCE BY RULE 3.850 MOTION FOR POST-CONVICTION RELIEF ON THE BASIS THAT THE SOLE REASON FOR DEPARTURE, HIS STATUS AS A HABITUAL OFFENDER, ALTHOUGH VALID UNDER A LOWER APPELLATE COURT DECISION AT THE TIME IMPOSED, IS INVALID UNDER A SUBSEQUENTLY ISSUED SUPREME COURT DECISION ENUNCIATING A DIFFERENT CONSTRUCTION OF THE SENTENCING STATUTES AND SENTENCING GUIDELINES RULE?
We find no merit in the other issues raised by appellant.
REVERSED and REMANDED.
JOANOS and WIGGINTON, JJ., concur.
NOTES
[1] Section 775.084 authorizes the enhancement of the sentence up to thirty years for a second degree felony.
[2] Parenthetically, we note that the clerk of the lower court reports that no transcript of that hearing is available, and we do not know whether Hall was represented by counsel.
[3] At the time of this court's decision on Hall's first appeal, the Whitehead decision was pending in the supreme court on a certified question dealing with the need to affirmatively elect sentencing under the guidelines where the offense occurred before October 1, 1983, rather than the habitual offender issue.
[4] We broadly construe Hall's pro se allegations, which attack his habitual offender status and the validity of the departure sentence based thereon, as reasonably encompassing the effect of the Whitehead decision on the validity of his sentence. This specific ground may be raised in a subsequent rule 3.850 motion based on a change in the law. See Witt v. State, 465 So.2d 510, 512 (Fla. 1985) (justification for a second rule 3.850 motion "could be established by a showing ... that there has been a change in the law since the first petition."). Indeed, any fundamental sentencing error that could cause the defendant to be incarcerated for a greater length of time than the law permits may be challenged in a successive motion under rule 3.850. Dowdell v. State, 500 So.2d 594 (Fla. 1st DCA 1986) (en banc).
[5] E.g., Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977).
[6] E.g., Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).
[7] See generally 13 Fla.Jur.2d, Courts and Judges, § 159 (1979) ("[a] decision overruling a case dealing with the construction of a statute will ordinarily be deemed to relate back to the enactment of the statute much as though the overruling decision had been originally embodied therein").
[8] See generally 13 Fla.Jur.2d Courts and Judges § 137 (1979).
[9] See generally, 13 Fla.Jur.2d, Courts and Judges § 159 (1979) ("a litigant whose cause has been prosecuted to judgment may not reopen the case on the ground that there has been a change in the interpretation of the applicable law"). The relationship between the two principles is discussed in United States ex rel. Steffner v. Carmichael, 183 F.2d 19, 21 (5th Cir.1950):

Appellant contends that, since this was the first pronouncement by the Supreme Court on the law under this statute, it must be considered to have been the law in 1936, at the time appellant was first ordered deported. We cannot accede to this contention. If it were true that a change in the interpretation of the law applicable to a cause prosecuted to judgment entitled the party who had been affected by such change to reopen the controversy, lawsuits would not be settled with finality.
[10] Although not noted by the supreme court, several months before release of it's opinion reversing our decision in Bass, 478 So.2d 461, this court, sitting en banc, receded from that decision for the reasons stated in Dowdell v. State, 500 So.2d 594 (Fla. 1st DCA 1986).
[11] §§ 921.001 and 775.084, Fla. Stat.; rules 3.701 and 3.988, Fla.R.Crim.P.

Rules 3.701 and 3.988 were promulgated on May 8, 1984, by the supreme court pursuant to section 921.001, Florida Statutes (1983), and were in turn expressly "adopted and implemented in accordance with s.921.001" by the legislature in chapter 84-328, Laws of Florida. Hence, these rules have the effect of a statute, see Occidental Chemical Agricultural Products, Inc. v. State, Department of Environmental Regulation, 501 So.2d 674 (Fla. 1st DCA 1987), and provide for substantive rights setting the maximum allowable sentence in the sentencing process. Miller v. Florida, ___ U.S. ___, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987).
[12] A sentence in excess of the guidelines' recommended range which is not supported by valid written reasons for departure is essentially an illegal sentence. See, e.g., Williams v. State, 500 So.2d 501 (Fla. 1986); State v. Whitfield, 487 So.2d 1045 (Fla. 1986); Senior v. State, 502 So.2d 1360 (Fla. 5th DCA 1987); McCullum v. State, 498 So.2d 1374 (Fla. 3rd DCA 1986).
[13] See note 4, supra.
[14] The supreme court opinion in Williams v. State, 492 So.2d 1308 (Fla. 1986) indicates that when each reason for departure is found invalid by the appellate court, resentencing on remand must be within the guidelines. See also Foister v. State, 510 So.2d 371 (Fla. 1st DCA 1987). We view that holding to be inapplicable to this case because the sole reason for departure stated by the trial court had been judicially approved and the state might well be able to present additional evidence of other clear and convincing reasons for departure.